IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON P. EPP, and <br> JIMMY C. LOVE, <br><br>         Plaintiffs, <br><br> vs. <br><br> RENT-A-CENTER, INC., <br><br>         Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    No. CIV-04-1739-C <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Stay Proceedings and Compel Arbitration, filed by Defendant, Rent-A-Center, Inc. (the Company). The Company argues that Plaintiffs, Jason P. Epp and Jimmy C. Love (Employees), agreed to arbitrate all employment-related disputes and requests that the Court enforce this agreement and dismiss or stay this action pending arbitration. Employees argue that the agreement is unenforceable because it was procured by fraud, fails for lack of consideration, and contains unconscionable terms. Finding that a valid arbitration agreement exists, the Court grants the Company's motion.

BACKGROUND

In 2002, Employees executed arbitration agreements with the Company (Agreements). The Agreements provided for the arbitration of all claims or controversies arising out of Employees' employment with the Company except workers' compensation claims, claims for unfair competition, and unauthorized use or disclosure of trade secrets. (Agreements, Apps. 1-2 to Def.'s Br., Dkt. No. 12, at 1.) Both parties thus forfeited their right to have these claims heard by a jury. (Id. at 1, 4.) The Agreements limited the discovery available

to the parties, allowing each party only one deposition and an unlimited number of requests for production. (Id. at 2.) If a party needed additional discovery, that party was required to seek leave from the arbitrator. (Id.) The costs of the arbitration were to be shared equally between Employees and the Company. (Id. at 3.) The Agreements also included a severability clause. (Id. at 4.)

Both Employees signed the agreements. Above the signatures was written in bold capital letters:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

(Id.)

Although neither Plaintiff recalls signing the Agreements, both acknowledge signing several documents upon being hired with the Company. (Epp Decl., Exh.1 to Pl.'s Resp., Dkt. No. 21, ¶¶ 8-9; Love Decl., Exh. 2 to Pl.'s Resp., Dkt. No. 21, ¶ 8.) Employees contend that they were told that the documents were unimportant and were only necessary for their personnel files. (Epp Decl. ¶ 9; Love Aff ¶ 8.) Epp contends that he was instructed not to

bother reading the documents. (Epp Decl. ¶ 9.) Both Employees assert that they never received a copy of paperwork they signed nor were they ever informed that they would be required to arbitrate any potential claims. (Epp Aff ¶ 10; Love Aff ¶ 10.)

Employees also each executed a "Coworker Handbook Acknowledgment." This form acknowledges that the employment was "at-will." (Coworker Handbook Acknowledgment, Exh. 3-4 to Pls.' Resp.) The form also indicates that the Company could amend or revoke any of the provisions of the Coworker Handbook. (Id.) Finally, it stated that "where a contract is intended, it will be in writing and signed by the Chairman of the Board." (Id.)

The Employees assert that after they commenced work for the Company, they were subjected to racial and sexual discrimination. According to Epp, his supervisors and managers made racial slurs and derogatory comments about African-Americans and Hispanics. (Epp Decl. ¶ 4.) Love indicates that "[c]omments such as 'niggers', 'wetbacks', and 'spics' were common." (Love Decl. ¶ 4.) Epp also asserts that his manager made sexually degrading remarks and asked Epp to perform oral sex on him. (Epp Decl. ¶ 4.)

Despite Epp's and Love's repeated complaints, the Company did not take any corrective action. (Id. ¶ 6; Love Decl. ¶ 5.) Epp and Love then filed complaints with the EEOC and, after receiving EEOC findings in their favor, filed this action. (Epp Decl. ¶ 7; Love Decl. ¶ 7.)

<u>APPLICABLE LEGAL STANDARDS</u>

The Federal Arbitration Act (FAA) provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Before the Court can compel arbitration, however, it must assure itself that a written agreement to arbitrate exists. Contrary to the Company's assertion, there is no presumption in favor of arbitration when the question is the existence of a valid arbitration agreement. See <u>Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.</u>, 157 F.3d 775, 779 (10th Cir. 1998).

To decide whether a valid and enforceable contract exists, the Court looks to the applicable contract principles of the forum state. See <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996); <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 513 U.S. 265, 281 (1995). Accordingly, the Court applies the contract law of the State of Oklahoma.

Under Oklahoma law, a valid contract requires mutual assent to the terms of the contract. 15 Okla. Stat. § 2. Mutual assent means that there is a meeting of minds on each essential element of the agreement before the agreement will be binding on the parties. See <u>Cloud v. Winn</u>, 1956 OK 267, ¶ 15, 303 P.2d 305, 309. Generally, consent is communicated through the exchange of an offer and acceptance. See, e.g., 15 Okla. Stat. § 69. Consent

may also be demonstrated through one party's performance of the conditions of a proposal or acceptance of the consideration accompanying such a proposal. 15 Okla. Stat. § 70.

Consent must be given freely. 15 Okla. Stat. § 51. A party has not freely consented if the contract is procured through actual or constructive fraud. 15 Okla. Stat. § 53. "Actual fraud is the intentional misrepresentation or concealment of a material fact which substantially affects another person." Faulkenberry v. Kansas City S. Ry. Co, 1979 OK 142, ¶ 4, 602 P.2d 203, 206. Constructive fraud exists when one party, with a duty to another, misleads the other to his prejudice. 15 Okla. Stat. § 59 (1).

To be valid, a contract also requires mutuality of consideration. 15 Okla. Stat. § 2. Good consideration is defined as

> [a]ny benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

15 Okla. Stat. § 106. When a contract is written, the Court presumes that valid consideration was exchanged for the promises contained therein and the burden to demonstrate otherwise rests with the party seeking to invalidate or avoid the contract. 15 Okla. Stat. § 115; Johnson v. Schick, 1994 OK 109, ¶ 8, 882 P.2d 1059, 1061.

DISCUSSION

The Employees challenge the Agreements on three grounds.  First, Employees argue that the Agreements were procured by fraud, thus vitiating Employees' consent.  Second, Employees argue that the Agreements were not supported by adequate consideration because the Coworker Handbook Acknowledgment Form reserved the right for the Company to unilaterally modify or terminate the policies and benefits of employment at any time.  Third, Employees argue that the Agreements should not be enforced because they are unconscionable.

*Fraud*

The Court begins its analysis with the basic principle that a party who executes a contract is generally presumed to have read the document and understood it.  Adams v. Merrill Lynch, Pierce, Fenner & Smith, 888 F.2d 696, 701 (10th Cir. 1989).  Thus, an individual's failure to read a contract before executing it does not render the contract invalid.  See Wilson v. Massachusets Indem. & Life Ins. Co., 920 F.2d 1548, 1552 (10th Cir. 1990) (interpreting Oklahoma law to bind an insured to the provisions of an insurance contract where insured had not read the contract).

A party is bound to the provisions of a contract, absent fraud or duress, regardless of any oral representations made.  Id.; 15 Okla. Stat. § 137.  Here, Employees seek to avoid this contract by claiming fraud.  "[F]raud is never presumed and where a written agreement is attacked on the ground of fraud, that agreement will be upheld unless the allegations of fraud

are established by clear and convincing evidence." Funnell v. Jones, 1985 OK 73, ¶ 14, 737 P.2d 105, 108.

There was no fraud here. Employees allege that the fraud occurred when they were asked to sign the Agreements without being told what they were and when the Company represented that the Agreements were unimportant. However, simply misrepresenting the nature of the document or the importance of the document to a person able to read and in full possession of his faculties is not fraud. First Nat'l Bank & Trust Co. v. Kissee, 1993 OK 96, ¶ 14 n.19, 859 P.2d 502, 507 n.19. Therefore, the Court finds that Epp and Love freely consented to the Agreements.

*Consideration*

The Agreements were supported by consideration. The parties agreed in writing to submit to arbitration any legal claims that might arise out of Employees' employment, each therefore relinquishing their legal right to have their dispute heard in a judicial forum. A mutual promise to forego litigation of future disputes is sufficient consideration. See Pierce v. Kellogg, Brown & Root, Inc., 245 F.Supp.2d 1212, 1216 (E.D. Okla. 2003).

Employees, however, argue that the consideration was not mutual. When one party retains an unfettered right to alter or revoke the contract, the party retaining that right has not actually promised anything at all and the contract fails for lack of mutuality of consideration. See Dumais v. Am. Golf Corp., 299 F.3d 1216, 1219 (10th Cir. 2002). In Dumais, the Tenth Circuit held that an arbitration agreement was illusory because the agreement permitted the

employer to "unilaterally alter, modify, change, etc., any provision" of the agreement without notice to the employee. Id. at 1218-19.

Here, however, the Company did not retain any right to alter or terminate the Agreements, only the policies and benefits contained in the Coworker Handbook.[1] Thus, the Company is equally bound to its promise to arbitrate and the Agreements are not illusory.[2]

*Unconscionable Terms*

Employees assert that the Agreements should not be enforced because they unduly restrict their procedural and substantive rights. Although they enumerate a long list of such alleged terms, they fail to identify how those terms have unduly affected their rights in this case.

In the absence of a factual showing how these terms would unduly hamper these litigants' procedural and substantive rights, the Court must adhere to the "'liberal federal policy favoring arbitration agreements.'" Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91-92 (2000) (holding that a litigant seeking to invalidate an arbitration agreement because the arbitration would be expensive bears the burden of showing the likelihood of incurring

---

[1] Employees assert that the Coworker Handbook may mention or discuss the Defendant's arbitration policies and procedures, and thus they should be entitled to conduct discovery on this matter. However, even if the parol evidence rule did not apply to prohibit consideration of such evidence, Employees did not submit an affidavit in compliance with Fed. R. Civ. P. 56(f) to request such discovery prior to the Court ruling on this motion.

[2] Employees also argue that the statement in the Coworker Handbook Acknowledgment that "where a contract is intended, it will be in writing and signed by the Chairman of the Board" is evidence that the Agreements were not a contract. This statement, however, does not appear in the Agreements and the Agreements appear on their face to be the "complete agreement of the parties on the subject of arbitration of disputes." (Agreements at 4.)

prohibitive expenses), quoting <u>Moses H. Cone Mem'l Hosp.v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983).  Additionally, the Court notes that the Agreements contain a severability clause and, if such terms were unconscionable, they could be severed while preserving the thrust of the contract – the agreement to arbitrate.

CONCLUSION

Because the parties entered into a valid arbitration agreement, Defendant's motion to compel arbitration (Dkt. No. 11) is GRANTED.  In accordance with the FAA, this matter is STAYED pending resolution of the arbitration proceedings.  An order of administrative closing will enter, as well.

IT IS SO ORDERED this 23rd day of May, 2005.

_____
ROBIN J. CAUTHRON
United States District Judge